1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7
8           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

**United States District Court**
For the Northern District of California

10   EXPRESS MEDIA GROUP, LLC, ET AL,          No. C 06-03504 WHA
11   and DVD.COM, Inc.,

12           Plaintiffs,

13     v.                                       **ORDER GRANTING PLAINTIFFS'
                                                MOTION FOR PARTIAL SUMMARY
14   EXPRESS CORPORATION and                    JUDGMENT AND DENYING
     GREGORY RICKS,                             DEFENDANTS' MOTION TO FILE
15                                              AN AMENDED ANSWER**
             Defendants.
16   _____/

17
18                        **INTRODUCTION**

19          In this action for cyberpiracy, conversion and other claims, plaintiffs move for partial

20   summary judgment under Rule 56(c) on their claim for conversion. Plaintiffs have eliminated

21   all triable issues of fact as to the elements of their conversion claim. In response, defendants

22   only argue that they have valid title to the domain name under the good-faith purchaser defense.

23   This affirmative defense was not pleaded in defendants' answer, so defendants have filed a

24   motion for leave to file an amended answer to add the defense. Even if defendants had pleaded

25   the defense, however, they have presented no evidence that would indicate that they have

26   obtained good title to the domain name from an unknown third party. Accordingly, plaintiffs'

27   motion for partial summary judgment on the conversion claim is **GRANTED**. Defendants are

28   hereby ordered to return the domain name to plaintiffs. Defendants' motion for leave to file an

     amended answer is **DENIED**.

**United States District Court**
For the Northern District of California

**STATEMENT**

Plaintiffs and defendants do not dispute the following facts. Plaintiffs Express Media Group, LLC and DVD.com, Inc., were the owners of the domain name express.com (Tregub Decl. ¶ 2). Express Media originally obtained the domain name when another company, Express.com, Inc., sold its bankruptcy estate including the domain name to Express Media in 2001 (*id*. at ¶ 5, Exhs. C, D). The sale was finalized on September 5, 2002 (*id*. at ¶ 11, Exh. H). Thereafter, Express Media transferred the domain name to its wholly-owned subsidiary, DVD.com (*id*. at ¶ 13).

Plaintiffs administered their domain name through a domain-name registry, Network Solutions, Inc. Susan Tregub was listed as the administrative contact for the domain name, and the email address "stregub@grayboxllc.com" was listed in Network Solutions' registry entry for the domain name (*id*. at Exh. I). The registration also listed an address and phone number for Tregub. The contact information was available to the public as a WHOIS record and remained the same until early in October 2004.

Defendants present a copy of an unsigned agreement between Network Solutions and registrants of domain names. In paragraph thirteen of the agreement, users were warned that under the agreement, they authorized Network Solutions to process any and all account transactions initiated through the use of the user's password. Paragraph eight cautioned that use of the service was at the registrant's own risk (Anthony Decl. Exh. 2).

The contact information for administrative and technical contacts for the express.com domain name was maintained as an entry on the WHOIS record that was administered by Network Solutions. WHOIS records are maintained by domain name registrars that make domain name contact and ownership information searchable and available to the public. At some time, unknown persons, presumably cyber criminals, changed the WHOIS record for the express.com domain name. The listed address was changed from "5890 W. Jefferson Blvd." to "589 W. Jefferson Blvd.," the phone number was changed, "DVD.com, Inc." was removed as the technical contact and the email addresses for the account were changed (*id*. at ¶ 15, Exh. J). Tregub was still listed as the administrative contact but communications regarding the account

2

could no longer reach her because the email address was changed.  Tregub testified in a deposition that she did not transfer the domain name and was unaware that the changes to the contact information had taken place (Tarabichi Decl. Exh. A at 91:18–92–3; 97:1–98:3).

The domain name was then transferred from the unknown third party to defendant Gregory Ricks.  Ricks has owned many thousands of domain names and has been involved in a number of legal disputes concerning them over the years (Ricks Decl. ¶ 2).  After reviewing the amount of internet traffic associated with the domain name express.com, he contacted a person purporting to be "Susan Tregub" on or about October 12, 2004, at the email address listed on the WHOIS registration (*id*. at ¶ 3–4).  This occurred very soon after the contact info on the registration was changed.  Ricks negotiated via email to purchase the domain name for $150,000 (*ibid*.).  Ricks admitted in an email that the domain name was likely worth at least one million dollars and had sold for twice that during the heyday of the dot-coms (Tregub Decl. Exh. O).  The transaction was completed on or about November 12, 2004, through a website called escrow.com.  The funds ultimately ended up in a bank in Lithuania (*id*. at Exh. A).  Ricks declares that at no time did he have any reason to believe that he was dealing with anyone other than the true owner of the domain name (*id*. at ¶ 6).  Ricks, however, never spoke to the person purporting to be Susan Tregub via telephone, nor did he meet the person face-to-face.  All negotiations and transfers of funds were conducted via email.  The third party from whom Ricks purchased the domain name has never been identified.  In sum, the facts are that plaintiffs Express Media and DVD.com were the rightful owners and were robbed of the domain name by thieves who then sold the domain name to defendants.

This action was originally filed on May 31, 2006, naming express.com as a defendant under the *in rem* provisions of 15 U.S.C. 1152(d)(2).  Ricks appeared at a case management conference held on September 14, 2006.  After investigating the circumstances surrounding the alleged theft of the domain name, plaintiffs filed a motion to amend their complaint to add Express Corporation and Gregory Ricks as defendants.  The motion was granted on January 4, 2007.  Discovery in this action closed on April 27, 2007.

United States District Court

For the Northern District of California

1    Plaintiffs filed this motion for partial summary judgment on April 5, 2007.  The

2    opposition raised the good-faith purchaser defense.  In their reply brief, plaintiffs pointed out

3    that defendants had not pleaded the affirmative defense of being good-faith purchasers in their

4    answer and as such the defense was waived.  Shortly thereafter on April 19, 2007, defendants

5    filed a motion for leave to file an amended answer adding the affirmative defense.  A hearing

6    was held on the motion for partial summary judgment on April 26, at which defendants' motion

7    was discussed.  After the hearing, the Court requested further information on plaintiffs'

8    intentions to pursue the rest of their claims if the motion for partial summary judgment was

9    granted.  Plaintiffs responded and stated that they would not continue to pursue their other

10   claims if the motion were granted and if the Court entered an order requiring defendants to

11   return the domain name.  This order addresses both plaintiffs' and defendants' motions.

**ANALYSIS**

**1.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.**

14   Summary judgment should be granted where the pleadings, discovery, and affidavits

15   show "that there is no genuine issue as to any material fact and that the moving party is entitled

16   to judgment as a matter of law."  FRCP 56(c).  The moving party has the initial burden of

17   production to demonstrate the absence of any genuine issue of material fact.  *Playboy*

18   *Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004).

19   Once the moving party has met its initial burden, the nonmoving party must "designate specific

20   facts showing there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

21   (1986).  "If the moving party shows the absence of a genuine issue of material fact, the non-

22   moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

23   issue for trial."  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation

24   omitted).

25   Here, plaintiffs have moved for summary judgment on their claim for conversion.

26   Plaintiffs have the burden of proof, so they must set forth facts that would entitle them to a

27   directed verdict at trial.  If they fail, then the inquiry ends, and summary judgment is denied.  If

28   they succeed, then the burden shifts to defendants to produce evidence showing that there is a

1   genuine issue of material fact remaining for trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

2   210 F.3d 1099, 1102 (9th Cir. 2000).

3          "Conversion is the wrongful exercise of dominion over the property of another.  The

4   elements of a conversion are the plaintiff's ownership or right to possession of the property at

5   the time of the conversion; the defendant's conversion by wrongful act or disposition of

6   property rights; and damages."  *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543–544

7   (Cal. 1996).  The Ninth Circuit has recognized that internet domain names constitute property

8   rights sufficient to support a claim for conversion under California law.  *Kremen v. Cohen*,

9   337 F.3d 1024, 1031 (9th Cir. 2003) (holding that California courts have construed the merger

10  requirement in a property right to be minimal, thus intangible property rights are properly the

11  subjects of claims for conversion).

12                    **A.       Ownership or Right to Possess.**

13         Plaintiffs must show that they either had actual possession of the domain name or a right

14  to possess the domain name at the time of the conversion.  *Messerall v. Fulwider*, 245 Cal.

15  Rptr. 548, 550 (Cal. Ct. App. 1988).  Plaintiffs present evidence that they had actual title to the

16  domain name and the immediate right to possess it.  Express Media had purchased the domain

17  name in a bankruptcy estate sale.  Express Media then transferred ownership of the domain

18  name to its subsidiary, DVD.com.  Defendants do not present evidence to the contrary.

19         Defendants instead argue that Express Media, through Susan Tregub, transferred the

20  domain name to the unknown third party.  Specifically, they argue that plaintiffs admitted in the

21  complaint that Network Solutions, the domain name administrator, transferred ownership to an

22  entity known as "DNS Admin" without plaintiffs' permission (Compl. ¶ 18).  "DNS Admin"

23  was a placeholder name Ricks used between the time he purchased the domain name and the

24  time Express Corporation was formed (Ricks Decl. ¶ 5).  Thus, defendants argue that Express

25  Media had no right to possess the domain name at the time of the conversion because they had

26  transferred to the domain name to Ricks through Network Solutions.

27         There are two problems with this argument.  First, Ricks has presented no evidence that

28  Express Media and DVD.com either knew they were transferring the domain name to the third

party, or that they were transferring the domain name to Ricks.  The allegation in the complaint

stated that Network Solutions, not Express Media, was fraudulently induced into transferring

ownership.  Even if ownership was actually transferred to Ricks, Express Corporation did not

authorize or know about the transfer.  Second, the claim that title was transferred from Network

Solutions to Ricks fails as well.  Ricks presents evidence that he paid money to an unknown

entity, and *not* to Network Solutions, to "take title" to the domain name.  Defendants'

arguments rest on changes to the WHOIS records and the registration contact information for

the domain name.  Such records, however, are not the equivalent of statutorily-created title

systems.  They are privately-maintained systems for providing contact information and keeping

records for domain names.  *Cable News Network L.P. v. CNNews.com*, 162 F. Supp. 2d 484,

486, n.6 (E.D. Va. 2001).  In contrast, plaintiffs have presented evidence that they purchased the

domain name along with a failed company's assets in a bankruptcy sale.  Defendants have failed

to produce evidence showing a triable issue of fact as to whether plaintiffs were entitled to

possession of the domain name at the time of conversion.

### B.      Conversion By Wrongful Act.

"It is not necessary that there be a manual taking of the property; it is only necessary to

show an assumption of control or ownership over the property, or that the alleged converter

applied the property to his own use."  *Farmers Inc. Exch. v. Zerin*, 53 Cal. App. 4th 445,

451–52 (Cal. App. 1997).  Possession of the property coupled with refusal to return it is

sufficient to support a defendant's liability for conversion.  *Schroeder v. Auto Driveway Co.*,

11 Cal. 3d 908, 918 (1974).

Here, plaintiffs concede that they do not know the identity of the person who changed

the contact information on the domain name and subsequently sold it to defendants.  In their

answer, defendants admitted that they are currently the registrant of the domain name, and that

they currently control it (Gray Decl. Exh. E).  Defendants also do not dispute that plaintiffs sent

defendants a letter dated May 9, 2006, asking for the return of the domain name (*id*. at Exh. B).

Defendants have not returned the domain name to plaintiffs.  Viewing the evidence in the light

United States District Court

For the Northern District of California

6

United States District Court

For the Northern District of California

1    most favorable to the defendants, plaintiffs have shown that defendants have committed a

2    wrongful act in retaining possession of the domain name.

3            **C.    Damages.**

4            The measure of damages for a conversion claim is presumed to be the amount equal to

5    the value of the property at the time of conversion and an amount sufficient to compensate

6    plaintiff for the pursuit of the property.  Cal. Civ. Code § 3336.  Plaintiffs may also be entitled

7    to specific recovery of the converted property in addition to monetary damages.  Cal. Civ.

8    Code §§ 3379–3380.  Plaintiffs have been deprived of the use of their domain name, thus they

9    have shown that they have suffered damages.  Defendants present no evidence that plaintiffs

10   were not harmed or that rebuts the presumption of damages.  In their motion for partial

11   summary judgment, plaintiffs have asked for an order requiring defendants to return the domain

12   name.  Under California Civil Code § 3380, plaintiffs are entitled to the return of their property.

13   Viewing the evidence in the light most favorable to defendants, plaintiffs have shown that they

14   have suffered damages.

15           **D.    Good-Faith Purchaser Defense**.

16           Finally, defendants argue that they cannot be held liable because they purchased the

17   domain name in good faith.  This is an affirmative defense, so defendants bear the burden of

18   proof.  "As a general rule, an innocent purchaser for value and without actual or constructive

19   notice that his or her vendor has secured the goods by a fraudulent purchase is not liable for

20   conversion."  Witkin, *Summary of California Law*, § 716, 10th ed. (2005).  The law

21   distinguishes between the person who purchased from someone who obtained title to the

22   property by fraud and the person who purchased from a thief who had no title to sell.

23   Defendants produce evidence, which plaintiffs do not dispute, that defendants purchased the

24   domain name from an unknown third party who identified itself as "Susan Tregub."  The

25   question now becomes whether that unknown third party obtained title by fraud or merely stole

26   the domain name.

27           An involuntary transfer results in void title, while a voluntary transfer, even if

28   fraudulent, results in voidable title.  Cal. Com. Code § 2403(1); *Suburban Motors, Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, 218 Cal. App. 3d 1354, 1360–61 (Cal. Ct. App. 1990).  Here, defendants have presented no competent evidence that plaintiffs voluntarily transferred the domain name.  Susan Tregub, who was listed as the administrative contact and who Ricks believed that he dealt with in buying the domain name, declared that she never voluntarily transferred the domain name (Tregub Decl. ¶¶ 15–16).  Moreover, during her deposition Tregub testified that she never transferred the domain name and that no one ever contacted her asking her to do so (Tarabichi Decl. Exh. A).  Indeed, the real Susan Tregub could not have been contacted because her email address had been removed from the registration.

Defendants try to make much of the fact that plaintiffs do not know precisely how the third party changed the registration information.  The third party may have stolen plaintiffs' password, it may have bypassed Network Solutions' security measures, or it may have impersonated Susan Tregub in some other way.  The method does not matter.  Defendants cannot get around the fact that Susan Tregub never owned the domain name.  As an attorney for plaintiffs, Tregub was only the contact person for the domain name registration, she was never the owner.  Plaintiffs have shown that they did not voluntarily change the contact information and defendant does not present any evidence to the contrary.  Indeed, plaintiffs were not even aware that the contact information had been changed until they later checked the WHOIS records.  Thus, the third party who sold the domain name to defendants could not pass good title, and the good-faith purchaser defense does not apply.

Defendants contend that the agreement with Network Solutions defines the metes and bounds of plaintiffs' property rights in the domain name much like the deed to a piece of real property.  First, defendants have not authenticated the exhibits that they to be copies of agreements that plaintiffs entered into with Network Solutions.  Here, defendants merely downloaded what they claim to be the service agreement that plaintiffs entered into with Network Solutions.  Plaintiffs deny ever assenting to that agreement.  The agreement is neither an appropriate subject for judicial notice, nor has it been properly authenticated.  Thus, it cannot be considered evidence on summary judgment.

United States District Court

For the Northern District of California

Even if the agreement had been properly authenticated, it still does not have the same effect as a deed. Changes to the registration information do not constitute a transfer of ownership. Defendants attempt to distinguish the facts of this action from those in *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003). In that decision, the Ninth Circuit held that domain names were intangible property that could be converted. There, a domain name owner attempted to hold a domain name registrar liable for conversion where a third party had changed the registration information. Defendants seem to be arguing that here, Network Solutions took title to the domain name whereas in *Kremen*, the registrar merely exercised possession and control of the domain name. Nothing in the facts or the agreement would indicate that Network Solutions ever held title. Plaintiffs registered their domain name with Network Solutions, but they did not pass title to it.

Alternatively, defendants' argument to distinguish *Kremen* appears to rely on the idea that Network Solutions was acting as plaintiffs' agent under the agreement. For instance, defendants assert that Network Solutions had standing orders to honor any changes to the registration information. Elsewhere in the agreement, however, Network Solutions explicitly disclaims any agency relationship between it and domain name owners. The agreement stated that the parties had no authority to bind one another by contract or otherwise (Townsend Decl. Exh. B). Without an agency relationship, defendants simply cannot argue that Network Solutions had the authority or ability to transfer the domain name. Viewing the evidence in the light most favorable to defendants, they have not presented any evidence that the transfer of the domain name was anything but involuntary. The good-faith purchaser defense does not apply, and plaintiffs' motion for partial summary judgment is **GRANTED**. Defendants must return the domain name express.com to plaintiffs.

### 2. DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED ANSWER.

As noted above, defendants filed a motion for leave to file an amended answer to add the affirmative defense of having been a good-faith purchaser for value. Assuming, *arguendo*, that the defense could succeed (contrary to the foregoing analysis), this motion must still be denied. Leave to amend a complaint shall be freely given when justice so requires under FRCP

15(a).  This standard is applied liberally.  Rule 15(a) does not apply, however, when a district court has established a deadline for amending pleadings under FRCP 16(b).  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–608 (9th Cir. 1992).  Subsequent amendments are not allowed without a request to first modify the scheduling order.  At that point, any modification must be based on a showing of good cause.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

In their three-page opening memorandum, defendants argue that their motion should be granted under Rule 15(a).  Defendants cite the wrong standard.  A scheduling order for this action issued on September 14, 2006, and the last day to seek leave to amend the pleadings or add new parties was November 16, 2006.  That date is long past.  As to showing good cause for seeking this amendment, defendants merely argue that failing to plead it was "an oversight and certainly not a waiver of defense" (Br. at 2).  Defendants also claim that plaintiffs were on notice of the good-faith purchaser defense because of prior discussions between the parties.  Neither of these arguments is sufficient to establish good cause under Rule 16(b).  In fact, the latter argument shows that defendants were on notice of the defense long before filing this motion.  Thus, even if defendants could prevail on their good-faith purchaser defense, their motion to file an amended answer would be denied.  Accordingly, defendants' motion is **DENIED**.

## CONCLUSION

For all of the above-stated reasons, plaintiffs' motion for partial summary judgment is **GRANTED**.  Defendants' motion for leave to file an amended answer is **DENIED**.  Pursuant to plaintiffs' prior statement that they will not continue to pursue their remaining claims, this action is over and **THE CLERK SHALL CLOSE THE FILE**.[*]  Judgment shall be entered for plaintiffs.

Defendants are ordered to return the domain name express.com to plaintiffs by **MAY 24, 2007**, and to cooperate with plaintiffs in adjusting all registrations and usages so that plaintiffs

---

[*] This is without prejudice to plaintiffs' being able to pursue their other claims if this order should be reversed on appeal.

shall have unfettered use of the name.  If an appeal is taken, then the same relief is ordered

nonetheless but plaintiffs shall be required to post an appropriate bond.

**IT IS SO ORDERED.**

Dated:  May 10, 2007.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

11